**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SEPTEMBER EDELEN, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>           Plaintiff,<br><br>   v.<br><br>GHOST, LLC<br>C/O CT Corporation Systems<br>701 S. Carson St., Ste 200<br>Carson City, NV 89701<br><br><br>        Defendant. | Case No:  1:22-cv-5747<br><br>CLASS ACTION COMPLAINT<br><br> JURY TRIAL DEMANDED |

Plaintiff September Edelen ("Plaintiff Edelen" or "Ms. Edelen"), on behalf of herself and all others similarly situated, by and through her undersigned counsel, brings this action against Ghost, LLC ("Defendant" or "Ghost"). For her Complaint, Plaintiff alleges the following based upon personal knowledge as to her own acts and experiences and upon the investigation conducted by counsel as to all other allegations:

## SUMMARY OF THE ACTION

1.    Plaintiff, on behalf of herself and all putative members of the "Class" (defined below), brings claims under the New York General Business Law ("N.Y. GBL"), specifically N.Y. GBL §§ 349, *et seq*. and N.Y. GBL §§ 350, *et seq*., against Ghost as a class action. Plaintiff also brings claims for breach of implied warranty, breach of express warranty, fraud, unjust enrichment, and declaratory and injunctive relief.

2.    This action arises from the deceptive trade practices of Defendant in its manufacture and sale of nutritional powders containing branched-chain amino acids labeled

1

"Ghost BCAA X Swedish Fish" as well as "Ghost BCAA X Sour Patch Kids" and its advertisements which imply or claim it contains "5 calories", "0 calories", or omits that the Products contain Calories. The "BCAA X Swedish fish" product is marketed as "Enjoy your favorite candy flavor during your workout, throughout the day, or before a night out" The "BCAA X Sour Patch Kids" product line includes three flavor variations: Blue Raspberry, Pineapple, Redberry, and Watermelon. Moreover, these products are sub-brands of the BCAA Ghost portfolio, which contains several dozen stock keeping units ("SKUs") (collectively, the "Products"). The BCAA Ghost portfolio of numerous-like products are purposely misbranded for calorie content, with the "BCAA X Swedish Fish" line of products positioning "5" calories per serving while the other previously mentioned products all of which with purposely misbranded Calorie content of "0 Calories," or which omit Caloric information altogether from their respective nutritional labels. Meanwhile, the actual Calorie estimate for the Product is likely an approximate range from ***40-42 Calories***, depending on formulation and use guidance, which can include multiple servings per day.

3.     Ghost's representations regarding the number of Calories in the Product on its labels, webpages, and other marketing and advertising media and materials is purposely deceptive to create a competitive advantage against compliant competitors. However, it is the consumers that ultimately suffer by this deviant and non-compliant behavior because Ghost knowingly provides non-factual information and omits relevant information in an attempt to deceive and entice sales to these consumers who are seeking to purchase 0 Calorie products conducive to weight loss and control.

4.     Title 21 of the Code of Federal Regulations relating to nutritional labeling of food states that Calories are to be expressed to the nearest 5-Calories on labels. *See* 21 CFR 101.9(c)(1).

The Food and Drug Administration ("FDA") guidance relating to nutritional labeling of food describes several methods for estimating Calories in 21 CFR § 101.9(c)(1)(i). Of these methods, only five are relevant to the Products. These methods include (1) calories based on a per gram measurement of protein, fat, and carbohydrate of specific foods and other ingredients (this method is known as the Atwater Method); (2) calories calculated by assigning four, four, and nine calories per gram for protein, total carbohydrate, and total fat, respectively; (3) calories calculated by assigning four, four, and nine calories per gram for protein, total carbohydrate, and total fat, respectively, but then subtracting two calories per gram for non-digestible carbohydrates and between zero and three calories per gram of sugar alcohols; (4) using data for specific food factors for particular foods or ingredients approved by the FDA; and (5) using bomb calorimetry data. *See* 21 CFR § 101.9(c)(1)(i).

5.      Furthermore, per the FDA, Calories are a "Third Group" nutrient, which means they are nutrients associated with health concerns. Accordingly, like saturated fat, cholesterol, sodium, and other Third Group nutrients, the actual Calorie level/serving must not exceed greater than 20% of the labeled claim. *See* 21 CFR 101.9(g)(5)). Further, if Calories are stated in the Supplement Facts panel, actual Calories cannot be >20% of that labeled number, pursuant to 21 CFR 101.9(g)(5).

6.      Plaintiff conducted independent Calorie calculation of the products above.

7.      Plaintiff has analyzed the products "referred to herein jointly as "the Products") and evaluated them in accordance with each of the five methods provided by the FDA regulations and has concluded that every one of the five methods' results yield a calorie value that exceeds the claims on the Products' labels by more than twenty percent (20%).

3

8.     The actual caloric content versus the labeled caloric content per product is as follows:

     a.     BCAA X Swedish Fish contains 362 calories per 100 grams, and, assuming a serving of 11.5 grams, contains approximately 42 calories per serving, despite positioning "5" calories on its label; and,

     b.     BCAA X Sour Patch Kids contains 382 calories per 100 grams, and, assuming a serving of 10.5 grams, contains approximately 40 calories per serving, despite not providing any labeled calories.

9.     Ghost's representations are in direct violation of FDA guidance for labeling Calories when present at levels at or above 5 Calories/serving (*see* 21 CFR § 101.9(c)). The FDA requires marketers to declare Calories and Calorie-containing nutrients within the Nutrition Facts and Supplement Facts if they are determined to be in significant amounts. Moreover, in accordance with 21 CFR 101.60(a)(4), dietary supplements may only make nutrient content claims related to Calories when there are less than 5 Calories per labeled serving.

10.     The FDA provides a clear (high resolution) example of labeling Calories for an amino acid-based supplement via https://www.fda.gov/media/99158/download. This FDA example, as pictured below, displays approximately 4 grams of total amino acids, which would approximate 16 Calories and is listed as 15 based on rounding rules. The full FDA label set is included in **Appendix 1**. These labeling examples provided by the FDA remove any possibility of misunderstanding of the guidance given as such guidance pertains to this Complaint. The relevant example provided by the FDA is as follows:

| Supplement Facts | |
|---|---|
| Serving Size 1 Tablet | |
| Servings Per Container 50 | |
| **Amount Per Tablet** | |
| Calories | 15 |
| Isoleucine (as L-isoleucine hydrochloride) | 450 mg* |
| Leucine (as L-leucine hydrochloride) | 620 mg* |
| Lysine (as L-lysine hydrochloride) | 500 mg* |
| Methionine (as L-methionine hydrochloride) | 350 mg* |
| Cystine (as L-cystine hydrochloride) | 200 mg* |
| Phenylalanine (as L-phenylalanine hydrochloride) | 220 mg* |
| Tyrosine (as L-tyrosine hydrochloride) | 900 mg* |
| Threonine (as L-threonine hydrochloride) | 300 mg* |
| Valine (as L-valine hydrochloride) | 650 mg* |
| * Daily Value not established. | |

Other ingredients: Cellulose, lactose, and magnesium stearate.

11.     Nonetheless, Ghost continued to sell the Product with misleading labels despite knowing the inaccuracy of such representations. Ghost chose, and continues to choose, financial gain at the expense of consumers by concealing and omitting disclosure of this critical misrepresentation to consumers who, like Plaintiff, purchased the Product based specifically upon this "0 Calories" representation, for purposes of weight loss and control.

12.     Plaintiff does not seek to impose requirements greater than those required by FDA regulations. Plaintiff's claims do not seek to expand upon, or call for stricter standards than, the labeling or marketing requirements of caloric content established by FDA regulations.

## PARTIES

13.     Plaintiff Edelen is a citizen and resident of The Bronx, New York. Within the last three years, Plaintiff purchased the Product from Defendant's website after viewing pictures of its label, which omitted all mention of Calories, implying that 0 Calories were present. However, independent testing demonstrated that the Product contained substantially more Calories than Defendant advertised on the Product's label.

14.     At no point, either during Plaintiff Edelen's research on the Product or at the point of sale, did Defendant disclose that the Product actually contained significantly more Calories than the amount of Calories it impliedly advertised.

15.     Defendant is a Delaware limited liability corporation with its principal office in the State of Nevada. Ghost makes and distributes health supplements, vitamins, and nutritional protein powders throughout the United States and, specifically, to consumers in the state of New York.

16.     Defendant's Product is sold on its own and other third-parties' websites, along with through various physical retailers, including GNC, and the Vitamin Shoppe. The Product is purchased by consumers for personal use and consumption in the state of New York and throughout the United States.

## JURISDICTION AND VENUE

17.     This action is properly before this Court, and this Court has subject matter jurisdiction over this action under the Class Action Fairness Act. Specifically, at least one member of the proposed class is a citizen of a different state from Ghost, the number of proposed Class members exceeds 100, and the aggregate amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs. *See* 28 U.S.C. § 1332(d)(2)(A).

18.     This Court has general and specific jurisdiction over the Defendant because Defendant has sufficient minimum contacts within the state of New York to establish Defendant's presence in the state of New York, and certain material acts upon which this suit is based occurred within the state of New York. Ghost does substantial business in the state of New York and within this District, and otherwise maintains requisite minimum contacts with the state of New York. Specifically, Ghost distributed and sold the Product in the state of New York.

19.     Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because Defendant is subject to personal jurisdiction within the state of New York and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, including that Plaintiff purchased and used the Product in the state of New York and in this District. Additionally, Ghost distributes the Product in this District, receives substantial compensation and profits from the sale and lease of Product in this District, and has and continues to conceal and make misrepresentations and material omissions in this District.

## FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

### *THE SALE OF UNHEALTHY CALORIE-LADEN SUPPLEMENT POWDERS AS A DECEPTIVE TRADE PRACTICE*

20.     Each of the preceding paragraphs is incorporated by reference herein.

21.     Advertisements, packages, and labels should provide consumers with accurate information as to the nature and quality of a product's contents and should them assist in making informed decisions. When a company misrepresents material information about a product, it is deceptive and misleading to reasonable consumers.

22.     On its own website and other websites where the Product is sold, including GNC, Vitamin Shoppe, and Amazon, Ghost either entirely omits the true caloric content in each Product or provides an inaccurate labeling of calories contained in each Product per serving. Marketing for the Products state that each label contains "a transparent label that fully discloses the dose of each active ingredient" and is marketed as a "pre-workout"[1] For reference, some of these digital marketing images, along with direct Product labels, can be found below. Of note is the nutritional label affixed to each Product, whose image appears as a key advertising agent on many websites

---

[1] See Ghost-Product Page; Vitamin Shoppe-Product Page; Amazon-Product Page; GNC-Product Page

and prominently, purposefully misrepresents Caloric information. This packaging

misrepresentation, coupled with the explicit marketing of the Product as containing 0 or 5 Calories

and being congruent with consumer use in a Calorie deficit, a deliberate message to consumers

that the Calorie content of the Product is an irrelevant nutritional factor. Moreover, Defendant

affirmatively and misleadingly states that it employs "Transparent… Labeling" despite failing to

label the Calories in the Product. In other words, Defendant, explicitly and by omission, claims

that the Calorie content of the Product is negligible.





**GHOST® Full
Disclosure Label**

All GHOST® products feature a 100% transparent label that fully discloses the dose of each active ingredient. Zero proprietary blends means you know what you're getting in each and every scoop.

23.   Despite Ghost's omission of true Calorie content on every Product's label and the same representations on its website and other marketing material, indicating that the Product does not contain Calories or that the product contains only "5" Calories, independent laboratory testing has revealed that the BCAA X Swedish Fish Product actually contains approximately 362 Calories per 100 grams. Following Ghost's standard serving size recommendation of 11.5 grams, each serving contains approximately forty-two (42) Calories while the BCAA X Sour Patch Kids Product contained approximately 382 Calories per 100 grams. The BCAA X Sour Patch Kids has a labeled serving size of 10.5 grams, so each serving contains approximately forty (40) Calories –

each being far more Calories than the "5" or "0" represented on the Product's packaging and appearing prominently in Ghost's advertising and promotional materials.

24.     Ghost's sale of the Product deceives consumers, such as Plaintiff, because the package is materially misleading in that it includes improper Caloric information and, therefore, in violation of FDA regulations, indicates the absence of Calories per serving of its contents.

25.     Ghost's advertising deceives consumers, such as Plaintiff, by doing the same.

26.     Ghost's sale of the Product is deceptive to reasonable consumers, including Plaintiff Edelen. who are in the market for 0 or low Calorie products due to health and fitness considerations, because there is no practical way for consumers to know prior to purchase and consumption that the Product is laden with Calories despite being marketed as containing none per serving.

## CLASS ACTION ALLEGATIONS

27.     Under Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (c)(4), Plaintiff intends to seek certification of a Nationwide Class consisting of:

> **All persons who purchased the Product in the United States from within four years of the filing of this action through the present.**

28.     Plaintiff also intends to seek certification of a New York Subclass consisting of:

> **All natural persons who purchased the Product in the state of New York from within four years of the filing of this action through the present.**

29.     Plaintiff reserves the right to re-define the Class and Subclass at the conclusion of discovery as to class certification.

30.     Collectively, unless otherwise so stated, the above-defined Nationwide Class and New York Subclass are referred to herein as the "Class."

31.     Excluded from the Class are Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; anyone employed by counsel for Plaintiff in this action; any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to either of them and the spouses of such persons.

### NUMEROSITY

32.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown and such information is in the exclusive control of Defendant, Plaintiff believes that the Class encompasses thousands of individuals who are geographically dispersed throughout the nation; therefore, the number of persons who are members of the Class are so numerous that joinder of all members in one action is impracticable.

### COMMON QUESTIONS OF LAW AND FACT PREDOMINATE

33.     There is a well-defined community of interest in the questions of law and fact affecting the Class members.

34.     There are questions of law and fact common to all members of each Class: specifically, Plaintiff's claims arise from the same event or practice or course of conduct by the Defendant giving rise to those claims of the putative Class, and Plaintiff's claims are based upon the same legal theories as those of the putative Class. The Defendant has engaged in a pattern and practice, in violation of the law, of misrepresenting and omitting the number of Calories in the Product. The resolution of this issue—to wit, whether Defendant knowingly sold the Product with misleading labels and did not inform Plaintiff and Class members—is a common question of fact and law that will affect all members of the Class in the same manner.

35.    Other questions of law and fact common to the Class that predominate over

questions that may affect individual members include:

a.    The nature, scope, and operation of Defendant's wrongful
practices;

b.    The uniformity of the advertisements created through
Defendant's marketing materials;

c.    Whether Ghost misrepresented and/or omitted the number of
Calories in the Products;

d.    Whether Defendant engaged in fraudulent and/or deceptive
practices as to the Class members;

e.    Whether Ghost violated state consumer protection laws by
misrepresenting and concealing the number of Calories in
the Products;

f.    Whether Defendant's conduct amounts to violations of the
N.Y. GBL Sections 349 and/or 350;

g.    Whether Ghost deliberately misrepresented and omitted
material facts to Plaintiff and the Class members;

h.    Whether members of the Class may be notified and warned
about the contents of the Product and have the entry of final
and injunctive relief compelling Ghost to stop its
misrepresentations; and

i.    Whether Plaintiff and the Class suffered damages because of
Defendant's misconduct and if so, the proper measure of
damages.

### *TYPICALITY*

36.    The claims and defenses of Plaintiff Edelen are representative of the Class members

he seeks to represent and typical of the claims of the Class because the Plaintiff and the Class

members all purchased the Products. Plaintiff, like all Class members, purchased the Products

when it was advertised by Defendant as containing minimal or low Calories.

12

## *ADEQUACY OF REPRESENTATION*

37.     Plaintiff Edelen will fairly and adequately assert and protect the interests of the

proposed Class because:

      a.     She has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class;

      b.     She has no conflict of interest that will interfere with the maintenance of this class action; and

      c.     She has suffered consumer-related injuries and damages.

## *SUPERIORITY*

38.     A class action provides a fair and efficient method for the adjudication of the

instant controversy for the following reasons:

      a.     The common questions of law and fact set forth above predominate over questions affecting only individual Class members;

      b.     The proposed class is so numerous that joinder would prove impracticable. The proposed Class, however, is not so numerous as to create manageability problems; moreover, no unusual legal or factual issues render the Class unmanageable;

      c.     Prosecution of separate actions by individual members of the Class would risk inconsistent and varying adjudications against Defendant;

      d.     The claims of the individual Class members are small in relation to the expenses of litigation, making a class action the only procedure in which Class members can, as a practical matter, recover for the damages done to them by Ghost; and

      e.     A class action would be superior to, and more efficient than, adjudicating thousands of individual lawsuits.

39.     In the alternative, the proposed Class may be certified because:

a.      The prosecution of separate actions by the individual members of the proposed Class would create a risk of inconsistent or varying adjudication regarding individual Class members, which would establish incompatible standards of conduct for Ghost;

b.      The prosecution of separate actions by individual Class members would create a risk of adjudications dispositive of the interests of other Class members, not parties to the adjudications and substantially impair or impede their ability to protect their interests; and

c.      Ghost has acted or refused to act on grounds generally applicable to the proposed class, which justifies final and injunctive relief for the members of the proposed Class as a whole.

**ESTOPPEL FROM PLEADING AND TOLLING OF
APPLICABLE STATUTES OF LIMITATIONS**

40.     Defendant possessed exclusive knowledge about the number of Calories contained in the Products, including from its customer complaint and warranty records, internal emails, reports, analyses, and assessment of ingredients from suppliers, that is unavailable to Plaintiff and the proposed Class members.

41.     Throughout the time period relevant to this action, Defendant concealed the contents of the Products. As a result, neither Plaintiff nor the absent Class members could have discovered the number of Calories actually contained in the Products, even upon reasonable exercise of diligence.

42.     Despite its knowledge of the above, Defendant (a) failed to disclose, (b) concealed, and (c) continues to conceal critical information relating to the Product's caloric content, even though, at any point in time, it could have communicated this material information to Plaintiff and the Class through individual correspondence, media releases, or other means.

43.     Plaintiff and Class members relied on Defendant to disclose the number of Calories in the Products because the contents could not be discovered through reasonable efforts by Plaintiff and the Class members.

44.     Thus, the running of all applicable statutes of limitations have been suspended with respect to any claims that Plaintiff and the Class members have against Defendant as a result of Defendant's misrepresentations and omissions, by virtue of the fraudulent concealment doctrine.

45.     Ghost was under a continuous duty to Plaintiff and Class members to disclose the true nature, quality, and character of its Products. However, Defendant concealed the true nature, quality, and character of the Products, as described herein. Defendant knew about the number of Calories contained in the Product for years but concealed it and/or failed to alert purchasers or potential purchasers. Defendant maintained exclusive control over information concerning the number of Calories in its Products. Based upon the foregoing, Ghost is estopped from relying on any statutes of limitation or repose that might otherwise apply to the claims asserted by Plaintiff herein in defense of this action.

## **FIRST CLAIM FOR RELIEF**
**Breach of Implied Warranty**
**(On behalf of the Nationwide Class or, alternatively, on behalf of the New York Subclass)**

46.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

47.     Ghost sold its Products to Class members under implied warranties of merchantability and fitness. Ghost impliedly warranted the Product to be merchantable, fit for the ordinary purposes for which they were intended to be used (including the guarantee that they were in a safe and non-defective condition for use by their purchasers for the ordinary purpose for which they were intended and were not otherwise injurious). Ghost is under a duty to design,

manufacture, label, and test the Products to make them suitable for the ordinary purposes of their use—a dietary supplement that may support, and certainly not impede, weight loss and management with an energy boost.

48. Ghost breached its implied warranties for the Products by misrepresenting the actual number of Calories contained in the Product, failing to disclose the true number of Calories contained in the Products, and otherwise inadequately marketing the product as a dietary supplement that is congruent to weight loss, weight management, and lean muscle development, thus making the Products defective, unfit for the ordinary purposes for which it was intended to be used, and not merchantable.

49. When Plaintiff and the Class members purchased the Products, Defendant promised them a dietary supplement that (a) contained "0" or "5" Calories, (b) would be adequately labeled, (c) would pass without objection in the trade, and (d) would be fit for the ordinary purposes for which dietary supplement powders are used.

50. Defendant knew that its Products would be purchased by consumers seeking weight loss and management or otherwise tracking Calorie intake, so it developed the Products and its related marketing and advertisements for these specific purposes. Defendant knew that the Products would be sold by retailers for use by consumers with these specific weight loss and management and dietary needs. Accordingly, direct privity is not required to bring this cause of action.

51. Because the Products contains significantly more than the "0" or "5" Calories that were promised and represented by Defendant to Plaintiff and the Class, the Product purchased and used by Plaintiff and Class members is not merchantable. Ghost breached the implied warranty of

merchantability in the sale of the Products to Plaintiff and the Class members in that the Products are not fit for its ordinary purpose and not merchantable.

52.     Ghosts has been on notice of these material omissions and/or misrepresentations through, upon information and belief, its own internal research and development process, and through the nutritional disclosures made it to by its suppliers of ingredients for the Products. Ghost has had the opportunity to correct the number of Calories in the Products and/or correct its misrepresentations of the Product's caloric content but has chosen not to do so. Moreover, Plaintiff has sent a notice letter to the Defendant and immediate seller seeking a remedy for the material omissions and/or misrepresentations alleged herein. When confronted with the allegations herein, neither Defendant nor the immediate seller have remedied the omissions and/or misrepresentations.

53.     As a direct and proximate result of Ghost's breach of the implied warranty of merchantability and fitness for a particular purpose, Plaintiff and Class members did not receive the benefit of their bargains.

54.     Plaintiff and Class members are entitled to damages and other legal and equitable relief, including the purchase price of the Products, overpayment, or loss of the benefit of the bargain.

## SECOND CLAIM FOR RELIEF
### Breach of Express Warranty
### (On behalf of the Nationwide Class or, alternatively, on behalf of the New York Subclass)

55.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

56.     Defendant extended, by way of the Products label, Product descriptions and representations as to the Product's qualities and characteristics, on its website, and via Products

advertisements (among other in-person and digital marketing methods, as detailed herein) express warranties to Plaintiff and Class members that the Products contained "0" or "5" Calories. These promises and representations became part of the basis of the bargain between the parties and thus constituted an express warranty.

57.    Defendant sold the Products, and Plaintiff and Class members purchased the Products, based upon these representations and express warranty.

58.    However, Defendant breached the express warranty in that the Products did in fact contain anywhere from 40 to 42 Calories per serving, as set forth in detail herein. As a result of this breach of the express warranty, Plaintiff and other consumers in did not receive the Products as warranted by Defendant.

59.    Ghost has been on notice of these material omissions and/or misrepresentations through, upon information and belief, its own internal research and development process, and through the nutritional disclosures made it to by its suppliers of ingredients for the Products. Ghost has had the opportunity to correct the number of Calories in the Products and/or correct its misrepresentations of the caloric content of the Product's but has chosen not to do so.

60.    As a proximate result of this breach of express warranty by Defendant, Plaintiff and the Class have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
**Fraud By Omission**
**(On behalf of the Nationwide Class or, alternatively, on behalf of the New York Subclass)**

61.    Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

62.     At all relevant times, Ghost was engaged in the business of designing, manufacturing, and selling the Products.

63.     Defendant, acting through its representatives or agents, delivered the Products to distributors, manufacturers, and various other distribution channels.

64.     Defendant willfully, falsely, and knowingly omitted material facts regarding the quality and character of the Products.

65.     Rather than disclosing material facts to Class members, including but not limited to, the fact that the Products do not contain 0 or even 5 Calories, Ghost concealed material information related to the Product's Calorie content and continued manufacturing and selling the Products without making any disclosures.

66.     Ghost omitted and misrepresented the number of Calories in the Product to drive up sales and maintain its market power, since Ghost knew consumers would not purchase the Product (or would pay substantially less for the Product), had the Product's true caloric content been advertised and represented to consumers.

67.     Consumers could not have discovered the actual contents of the Product on their own. Ghost was in exclusive possession of such information.

68.     Although Ghost had a duty to ensure the accurate representation of its Products and to ensure accuracy of information regarding the Product's health benefits, it did not fulfill these duties.

69.     Plaintiff and Class members sustained injury due to the purchase of the Products containing more than the 0 or 5 Calories advertised by Defendant. Plaintiff and Class members are entitled to recover full refunds for the Products, or they are entitled to damages for loss of the benefit of the bargain or the diminished value of the Products, amounts to be determined at trial.

70.     Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiff and Class members; and to enrich themselves. Its misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future. Punitive damages, if assessed, shall be determined according to proof at trial that Defendant's acts were done maliciously, oppressively, deliberately, and with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights, and in part to enrich itself at the expense of consumers. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

**FOURTH CLAIM FOR RELIEF**
**Equitable Injunctive and Declaratory Relief**
**(On behalf of the Nationwide Class or, alternatively, on behalf of the New York Subclass)**

71.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

72.     Ghost is under a continuing duty to inform its customers of the nature and existence of Calories in the Products that it has sold.

73.     Plaintiff, members of the Class, and members of the general public will suffer irreparable harm if Ghost is not ordered to cease misrepresenting and omitting material information regarding the number of Calories contained in the Products.

74.     Injunctive relief is particularly necessary in this case because: (1) Plaintiff and the absent Class members desire to purchase products with the same qualities and attributes as Defendant advertised the Product to have; (2) if Defendant actually manufactures the Products with the amount of Calories advertised, Plaintiff and Class members would purchase the Products; (3) Plaintiff and Class members do not have the ability to determine whether Defendant's representations concerning the Products will be truthful if they purchase the Products.

75.     Despite Plaintiff's and Class members' desire to purchase the Product in the future, they expect that Defendant will continue to misrepresent or conceal the amount of Calories in the Products and will thus suffer harm that cannot be adequately remedied by the additional claims for damages alleged herein.

### FIFTH CLAIM FOR RELIEF
**Violation of the New York General Business Law § 349,**
**N.Y. Gen. Bus. Law § 349**
**(On behalf of the New York Subclass)**

76.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

77.     Plaintiff Edelen brings this claim individually and on behalf of the proposed New York Subclass against Ghost.

78.     Plaintiff and New York Subclass members are "persons" within the meaning of the N.Y. GBL. *See* N.Y. Gen. Bus. Law § 349(h).

79.     Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of the N.Y. GBL. *See* NY. Gen. Bus. Law § 349(b).

80.     Under N.Y. GBL section 349, "[d]eceptive acts or practices in the conduct of any business, trade, or commerce" are unlawful.

81.     In the course of Ghost's business, it failed to disclose and, indeed, actively concealed the actual number of Calories contained in the Products with the intent that consumers rely on that concealment in deciding whether to purchase the Products.

82.     By intentionally concealing that the Products contained substantially more than the 0 or even 5 Calories implied and/or represented by packaging and advertising the Products as a nutritional supplement conducive to consumers' health goals and muscle development, Ghost engaged in deceptive acts or practices in violation of N.Y. GBL section 349.

83.     Ghost's deceptive acts or practices were materially misleading. Ghost's conduct was likely to and did deceive reasonable consumers, including Plaintiff Edelen and New York Subclass members, relating to the number of Calories it contained and, therefore, the suitability of the Products to Plaintiff's and other New York Subclass members' fitness goals.

84.     Plaintiff Edelen and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Ghost suppressed.

85.     Defendant's misleading conduct set forth above occurred in the conduct of trade or commerce.

86.     Ghost's misleading conduct concerns widely purchased consumer products and affects the public interest. Defendant's conduct also includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large.

87.     Plaintiff Edelen and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's violations. Plaintiff Edelen and New York Subclass members are entitled to recover their actual damages or fifty dollars ($50.00), whichever is greater. Additionally, because Ghost acted willfully or knowingly, Plaintiff and New York Subclass members are entitled to recover three times their actual damages up to one thousand dollars ($1,000.00). Plaintiff is also entitled to reasonable attorney's fees.

**SIXTH CLAIM FOR RELIEF**
**Violation of the New York General Business Law § 350,**
**N.Y. Gen. Bus. Law § 350**
**(On behalf of the New York Subclass)**

88.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

89.     Plaintiff Edelen brings this claim individually and on behalf of the proposed New York Subclass against Ghost.

90.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:  False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

91.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms, or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual …

92.     Defendant's labeling and advertisements relating to the Calories in the Products were false and misleading in a material way, via affirmative representations and omissions, as Ghost failed to reveal material facts in light of such representations or conduct.

93.     Specifically, Ghost represented that the Products were a product that did not contain Calories conducive to consumer fitness goals in that way, while omitting material information concerning the true 40 - 42 Calorie range contained in the Products.

94.     This misrepresentation has resulted in consumer injury or harm to the public interest.

95.     As a result of this misrepresentation, Plaintiff and members of the New York Subclass have suffered economic injury because (a) they would not have purchased the Products

had they known the truth, and (b) they overpaid for the Products on account of the misrepresentations and omissions regarding the Caloric content of the Products.

96.     By reason of the foregoing and as a result of Ghost's conduct, Plaintiff and New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars ($500.00), whichever is greater. Additionally, because Ghost acted willfully or knowingly, Plaintiff and New York Subclass members are entitled to recover three times their actual damages up to ten thousand dollars ($10,000.00). Plaintiff is also entitled to reasonable attorney's fees.

**SEVENTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On behalf of the Nationwide Class or, alternatively, on behalf of the New York Subclass)**

97.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

98.     To the extent that there is any determination made by the Court that Plaintiff does not have standing to assert any contractual claims asserted against Ghost on the alleged basis of an absence of contractual privity or otherwise, this claim is asserted in the alternative.

99.     By its wrongful acts and omissions described herein, including selling the Products with more than the 0 and 5 Calories advertised or implied, Ghost was unjustly enriched at the expense of Plaintiff and the Class.

100.    Plaintiff and Class members purchased Products from the Defendant they otherwise would not have, paid more for Products than they otherwise would have, and are left with Products of diminished value and utility because of the number of Calories it actually contains. Meanwhile, Ghost has sold more of the Products than it otherwise could have and charged inflated prices for the Products, thereby unjustly enriching itself.

101. Thus, Plaintiff and the Class members conferred a benefit upon Ghost by purchasing the Products at the full price. Under the circumstances, it would be inequitable for Ghost to retain the profits, benefits, and other compensation obtained through its wrongful conduct in manufacturing, marketing, and selling the Products to Plaintiff and Class members based on the misrepresentation or omission that the Products contain "0" or "5" Calories.

102. Plaintiff and Class members are entitled to damages in the amount Defendant was unjustly enriched, to be determined at trial.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an order certifying the proposed Class and appointing Plaintiff and Plaintiff's counsel to represent the Class;

B. For an order awarding Plaintiff and Class members actual, statutory, punitive, and/or any other form of damages provided by and pursuant to the statutes cited above;

C. For an order awarding Plaintiff and Class members restitution, disgorgement and/or other equitable relief provided by and pursuant to the statutes cited above or as the Court deems proper;

D. For an order or orders requiring Ghost to adequately disclose the number of Calories in the Product and enjoining Ghost from misrepresenting that the Products contain "0 Calories" and omitting accurate Caloric information;

E. For an order awarding Plaintiff and Class members pre-judgment and post-judgment interest;

F. For an order awarding Plaintiff and Class members reasonable attorney fees and costs of suit, including expert witness fees; and

G. For an order awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the members of the Class, hereby respectfully demands trial by jury of all issues triable by right.

Dated: July 6, 2022                                    Respectfully submitted,

*/s/ Nicholas A. Migliaccio*
Nicholas A. Migliaccio, Esquire
(New York Federal Bar No. 4035838)
Jason S. Rathod, Esquire*
412 H Street NE, Suite 302
Washington, DC 20002
Tel. (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

D. Aaron Rihn, Esquire*
Sara J. Watkins, Esquire *
Robert Pierce & Associates, P.C.
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Tel. (412) 281-7229
arihn@peircelaw.com
swatkins@peircelaw.com

Robert Mackey, Esquire *
Law Offices of Robert Mackey
P.O. Box 279
Sewickley PA 15143
Tel. (412) 370-9110
bobmackeyesq@aol.com

* pro hac vice admission to be sought

*Attorneys for Plaintiff and Putative Class*

**Appendix 1.**



**(vii) Dietary supplement of amino acids**



# Supplement Facts

Serving Size 1 Tablet
Servings Per Container 50

| Amount Per Tablet | |
|---|---|
| Calories | 15 |
| Isoleucine (as L-isoleucine hydrochloride) | 450 mg* |
| Leucine (as L-leucine hydrochloride) | 620 mg* |
| Lysine (as L-lysine hydrochloride) | 500 mg* |
| Methionine (as L-methionine hydrochloride) | 350 mg* |
| Cystine (as L-cystine hydrochloride) | 200 mg* |
| Phenylalanine (as L-phenylalanine hydrochloride) | 220 mg* |
| Tyrosine (as L-tyrosine hydrochloride) | 900 mg* |
| Threonine (as L-threonine hydrochloride) | 300 mg* |
| Valine (as L-valine hydrochloride) | 650 mg* |

*Daily Value not established.

Other ingredients: Cellulose, lactose, and magnesium stearate.

27

Highlighted Supplement Facts displays 4.19g of AAs yielding 16.7 Calories, which in turn has been rounded to 5s when less than 50. Thus, the Calorie declaration is compliant at 15. https://www.fda.gov/media/99158/download.